The next item on our calendar is United States v. Franklin Graham. Thanks. No, I'm good. It always makes that noise. Don't worry. I just don't want to break it. That's what's annoying me. Use some WD-40 is what I could use. You may proceed. May it please the Court. My name is Jay Ofsiavich, and I'm here on behalf of the appellant defendant, Mr. Franklin Graham. Who compiled a terrible record when he was out on release. Can you concede that? I'm not denying that he has some problems and that he has had a number of alleged violations against him while he was on release. But most of these violations are attributable to his comorbidity. That is the relationship between his mental health issues, he's a schizophrenic, as well as his drug problems. And comorbidity, a person who is subject to these problems, tends to have more severe reactions and more severe problems in trying to deal with life and trying to correct them. So all of this does tend to combine and create further problems with his life. He did plead guilty to violating a condition of his supervised release. That is that he not commit another federal, state, or local crime when he tested positive for marijuana. And therefore, at some point, he had possessed a quantity of marijuana. That was what he pled guilty to. And there's no dispute about that. In my papers, I raise three points. This morning, I intend to focus on the first issue, whether the district court committed procedural error when it failed to comply with Section 3553C2's requirement to adequately explain, and then memorialize in writing, its reasons for imposing a sentence above the guideline range set forth in 7B1.4a. If there's time, I'll talk about the substantive reasonableness of the 24-month sentence that was imposed. It's my intention to rely on the papers regarding the question as to whether or not the court used the correct criminal history when imposing its sentence under the advisory range. Section 3553C2 requires the district court to do two things at sentencing. It must state in open court its reasons for imposing a sentence, and if a sentence is above the guideline range, the court is supposed to memorialize with specificity in writing its reasons for that range. And the record in this case shows that the court failed to do this. He did a lot of talking about his bad record. I have the sentencing colloquy right in front of me. She did a lot of talking about how he was a disappointment to her and that he obviously used drugs again, and he kept apologizing. Okay. Yes, Your Honor, that is correct. The court did a lot of talking, and Mr. Graham acknowledged that he has had these problems and he's been trying to work on them, and even the probation officer has acknowledged that he has mental health issues, that he has drug issues, that he has been trying to comply with his health care providers to address these issues. But these issues are such that they don't go away immediately, that there's going to be failures in trying to correct them. The talking that was done is rather interesting because there was a lot of statements made by the court as to her problems with Mr. Graham. But this does not explain why the court imposed a sentence above the guideline range. No magic words – courts have said that no magic words are necessary when imposing a sentence. Correct. And we're not saying that magic words are needed, but what we do need is clarity as to why the sentence itself is imposed, and that we don't have. One word would actually – You don't doubt that she could have sentenced him to an above guideline. If she gave a clear reason so that Mr. Graham would understand, the public would understand, the Bureau of Prisons would understand, so that you, in dealing with this appeal, would also clearly understand. While no magic words are needed, actually one word could have changed this entire appeal if the court just said because. And one word could have taken care of this because we would have had a reason as to why this sentence was imposed. You haven't even required that. I'm sorry? You haven't even required that. No, you haven't. So if there is a discussion, a long discussion, about a particular defendant in a supervised release context or an underlying conviction context, what you are now saying is that the district court needs to connect that discussion directly with the sentence by saying because of all of this or therefore. Therefore, we can think of many words to bring this connection together. That's the rule that you want. It would make things much clearer. What I'm asking for – No, no, no, but the standard is not much clearer. Is it clear enough? Well, we want – yeah, no. The way it is right now, it is not clear enough. The statement of reasons is faulty because there's no indication on the statement of reasons. There is no statement of reasons at all in this case. No statement of reasons portion of the judgment was filed. Which we could remand and ask you to file that. We've done that before. And that would be a perfectly reasonable thing to do. I have it up right now, and I'm just re-looking at it. 84 to 87 of the sentencing, when she sentenced him, she goes through his background. She goes through his plea. She goes through what the sentencing calculation was. She goes through the fact that he's repeatedly been given a break with regard to probation. She goes through the fact that he – she specifically mentions at 87 to lines 20, 21, that he cuts off his monitoring device because he gets anxious about it. And she says, you know, she says this sooner or later, you have to be held accountable for these things. And then she goes ahead and says, and the fact that you have drug problems and you're emotionally ill isn't enough because it hasn't worked before with you. And so what I'm going to do is I'm going to give you time in jail, but I'm going to do my best to make sure that you have the treatment that you need in jail. Which, I mean, this sounds like drug court. I think I'm back in Monroe Supreme in drug court. This sounds like drug court to me. And maybe that's what the federal courts are in now. But what more does she have to say? What is there, a catechism that she's supposed to recite? How do you not know what she was thinking, 83 to 87? How do you not know what she was thinking? Your Honor? I mean, you've read it, haven't you? Your Honor, in fact, I would even say it goes to page 90 in some of what she's saying. But what I'm saying – my point is she's saying a lot of things. There was a lot of things to say. He'd been constantly violating probation for years. He had a long criminal record. He cut off his bracelet because it made him nervous. But we don't know if the reason for the increased sentence is because of the cut off bracelet. We don't know if it's the increased sentence is because of the continued drug use. We don't know if the increased sentence is because he has a long criminal history. We don't even know if it's all of the above. She did not clarify that. Why would she mention it? Because it was irrelevant? For the same reason why she mentioned an older conviction that she says, well, I'm not going to consider this. That's right. So she said she wasn't going to consider it, so implying that the other thing she was. She went through with great care with this fellow's whole history to try to make him understand what she was doing and then said to him, and I understand you have a problem. You have a problem. And so therefore, I'm going to do everything I can to ensure that you're at a facility that has treatment. She was tying his reincarceration with his continued violations of the law and deciding that perhaps he needed a little less liberty and a little more treatment under a controlled environment. How much clearer could it be? In that sense, Your Honor, it brings us to my second point in that the sentence that was imposed then is really not substantively reasonable when we know that the Inspector General of the Department of Justice tells us that a defendant cannot get proper and adequate treatment in the BOP and that we know that he was requesting to be in a drug treatment program, a residential drug treatment program. She should check him into one of the residential treatment facilities from which he'll escape in Rochester and then he'll commit another crime. And then he'll say, well, I'm schizophrenic and I also have drug addiction. I suffer from comorbidity. This is the constant problem that judges face with people who have drug addiction. Sure, they have drug addiction, but sooner or later they have to come to grips with accountability. And one way to make them become accountable is to incarcerate them. It works. Because that works so well. Your time has expired, but you have two minutes for rebuttal. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Sean Eldridge. I'm an Assistant United States Attorney in the Western District of New York, and I represent the United States on this appeal. The District Court did not commit plain error, nor did it abuse its considerable discretion in sentencing. Why didn't she just file a written statement? We see this regularly, not just in the Western District, but we see it all over. Can't your office just regularly, and I realize that the District Court judges have big dockets, but can't your office just regularly remind them, Your Honor, we need a written statement? I mean, you know, a lot of times your office has done it here, admitted that remand is necessary. Sure, Your Honor. Let me address both points. The answer to your first question is absolutely we can and we will, and we've already discussed with the Probation Department, which primarily prepares the J&C, that this needs to be done in any of these cases, and I think we're obviously alerted to that fact, and we'll make sure that we pay attention to that, as I'm sure my colleague on the other side will, as I'm sure the Court will, and as I'm sure the Probation Office will. I'll deal with the end of the—I'm sorry, Judge. Are you fighting it here? You're not fighting remand here, are you? You're not fighting a remand? No, Judge. To be clear, what we say in the brief is, I think, is what is completely consistent with this Court's case law. This Court has repeatedly said in many cases that remand is not required, but that the better practice may be a limited remand. If this Court wants to limited remand this case for the Court to append the statement of reasons . . . I have no problem with that. None at all, Judge. I'll bring it back. How do we make clear to the district judges in your district and the other districts that after going through all the things that disturb them about a defendant standing in front of them, they don't say, therefore, or because of all this, I am imposing an above-guideline sentence? That would be easy. Judge, I don't think it's required, though, and I'll say two things to that. Number one, this Court in the Jones case discussed an issue similar to that. The claim was basically the Court should have articulated why it imposed 15 months as opposed to 14 months or 16 months. And, this Court said, the district court is not required to do that. We presume that the district court considered the correct factors, and the Court has to articulate those reasons on the record. . . . to district court judges. But, when they don't put it in the statement of reasons, and they don't draw that conclusion in their colloquy, we wonder if they know that they're doing an above-guideline sentence. Judge Pooler, respectfully, I disagree that Judge Wolfert did not do this in her oral presentation from the bench. And, what I call Judge Wolfert's kind of wrap-up paragraph of her sentencing, which is at pages A95 to A96 of the record, I think that, in and of itself, is sufficient. In there, she says, I'm sentencing you to two years' imprisonment, two years' supervised release. I frankly find I could have imposed a more significant sentence. You need some mental health and substance abuse treatment. You have to be willing to use the tools that the probation department has provided you with. You haven't done that. Instead, you violated my direction that you comply with electronic monitoring. What would make this complete is if she said, I am sentencing you to two years' in prison, followed by two years' supervised release. I understand this is above the guidelines. Sure. I'm not going to, I don't think it's error. But, I mean, that would make it so much easier. None of us would be here. Counsel would admit he wouldn't be here if she had done that. Sure. And, Your Honor, Judge Pooler, at the end, she wraps up by saying, I've considered the 3553A factors, which is Judge Wesley pointed out. I don't doubt that she did. Thank you. But did she convince me that she knew this was above the guidelines? Not really. Well, she did say on the record what the applicable guideline range was. She discussed the guidelines earlier in her colloquy. She did, Your Honor, because in one of... 12 to 18 months or something. She did, Judge, because one of the arguments was that the different criminal history category should have been applied based on the prior plea agreement. That's inconsistent with the law. Judge Wilford rejected that challenge. Discussed how she reviewed the original PSR in 2005. I'm not going to go back through the factors. The court is obviously familiar with them. The 24-month sentence in and of itself is reasonably, is substantively reasonable. Mr. Graham made his comorbidity arguments to the district court. Judge Wilford articulated her reasons why she thought 24 months was appropriate. And there, as this court has repeatedly said, this court is one of restraint and not one of micromanagement. And the reasons that she provided were more than sufficient to discharge her obligations under 3553A, especially in the context of supervised release where this court, Invercogliad, said that the district court's explanation need not be extensive nor detailed. Last but not least, the district court's other determinations were procedurally sound in terms of the criminal history category, which we briefly discussed. So unless the court has any further questions, I'd ask you to affirm the district court, with the exception of if the court wants a limited remand for the statement of reasons. We certainly don't oppose that. Thank you. Thank you very much. Counsel, do you want a limited remand for the statement of reasons?  I would like more than that, Your Honor. Though I do believe that a remand for the statement of reasons portion is important and should be done. As Judge Wesley pointed out, I find interesting, and it stood out particularly as I was working on this appeal, in going back, for some reason, in the Western District, in supervised release violations, we never see a statement of reasons portion of the judgment. It doesn't appear to ever be filed. Or if it does, it's something that never crosses my desk, and I have not been able to find one or look at it. Well, you should file more appeals. Aren't those under seal, the written statements of reasons? Yes, but we also, my office does a lot of these cases, so we have access to them in our client files, so we do see them. They're relevant to us. We don't see other attorneys, the panel attorneys, in their cases. But we do see in our own, and we do see a lot of supervised release violations in our office. So it stands out that, for some reason, these are not being done, so there needs to be some type of a correction there. Is there a reason why your office can't let the, I mean, you're an institutional actor in one sense, let the district coordinator? I'm sure Judge Geraci would take a call from Mary Ann Mariano tomorrow morning on the issue. It's very possible. Like I said, this is something that I've noticed just now, and it stood out in this particular appeal. I'm not suggesting anything by my question, but the federal defenders are very well respected, so a call from a federal defender might do the trick. An action by this court would probably create a much faster response. Please, you go first. In conclusion, I just want to say that we respectfully request that you view the district court's failure to comply with 3553C2 as a structural error, which has been viewed as akin to a defendant's right to a public trial, as noted in the United States v. Lewis, and vacate the judgment and remand for resentencing. And we also request that you view the 24th month sentence as substantively unreasonable. Thank you, counsel. Thank you. Thank you both. That was the last case on this calendar, so I will ask the clerk to adjourn court. We will reconvene in 20 minutes to hear Alliance for Open Society.